[Crim. No. 764.   Fourth Dist.   Apr. 29, 1952.]

THE PEOPLE, Respondent, v. PAUL SIDNEY WESTER, Appellant.

Wallace D. Dorman for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with burglary on two counts, and with two prior convictions. A jury found him guilty of second degree burglary on both counts and he was sentenced to prison, the two sentences to run concurrently. He appeals from the judgment and from an order denying his motion for a new trial.

On the morning of May 4, 1951, the owner of a hardware store in Fallbrook found that the store had been broken into during the night. A hasp fastening a sliding door at the rear had been broken and the safe had been opened with force. Seven revolvers had been taken, and about $1,000 in money had been taken from the safe. On the morning of May 8, the owner of a butane plant in Fallbrook found that the building had been entered by forcing the latch on a window. He had a collection of 21 rifles and shotguns, and these were missing.

One Baldwin, who was 17 years old, had been staying with the defendant in his room in Fallbrook for some two weeks before these incidents occurred. About 4 a. m. on May 8, a police officer found Baldwin asleep in the defendant's pickup truck in a gasoline station in Tijuana. There were two guns on the front seat of the car. Baldwin was arrested and taken to the police station and an officer remained to watch the car. A few minutes later the defendant came to the car and got in. The officer arrested him and took him and the car to the police station. Fourteen rifles, three shotguns and a revolver were found in the car, all of which were identified as having been taken from the two places in Fallbrook.

Baldwin at first told the Tijuana police that he alone had broken into the butane plant and brought the guns to Tijuana. He later said that this was not true, and that the defendant had told him to take the blame. In his testimony at the

trial he told in detail how he and the defendant had entered the hardware store, about the opening of the safe and the taking of the money and revolvers, where the money was divided and that the defendant gave him $275; that they then went to Tijuana and what they did the next few days, including a trip to Ensenada; and that they returned to Fallbrook on the night of February 7. He then told of the breaking into the butane plant and the taking of the guns; that they returned to Tijuana and parked the truck; that the defendant left for the purpose of trying to sell the guns; that two persons came to the truck saying they understood that some guns were for sale; and that he then fell asleep.

On May 9, two officers from San Diego had several conversations with the defendant in Tijuana. In the first of these, at the jail, the defendant told one of these officers that he had committed both of these burglaries. The defendant was then taken to the office of the federal district attorney at Tijuana. While waiting to see the district attorney the defendant told the San Diego officer that he and the boy got only about $500 out of the safe at the hardware store, that he had blown the money on liquor, and that he then pulled the job at the butane plant because he was broke. The defendant was then taken into the federal district attorney's office where he was questioned by a Mexican officer. The questions were asked and answered in English, and the interrogator translated the defendant's replies into Spanish and this was taken down in Spanish by a stenographer. After his statement was completed it was read to the defendant in English and signed by him. An English translation of this statement was admitted into evidence by consent, and the Mexican officer also testified as to what the defendant said at that time.

Later that day, at the jail in Tijuana, two San Diego officers had a further talk with the defendant. He told them in detail how he and the boy had entered the hardware store on the night of May 3, and how they had taken some revolvers and money from the safe; that he went to Tijuana and spent all of his money; that he was unable to sell the revolvers since they were stolen from his car; that they returned to Fallbrook on the night of May 7, with the intention of burglarizing the butane plant since he knew that the owner had a collection of rifles and shotguns; that he effected entrance by using a screwdriver on the window and forced the lock on the gun cabinet with the same screw-

driver; that he and Baldwin took the guns and returned to Tijuana; and that they had only been there a half hour when they were picked up by the police. The defendant's story, as told to the officers, corresponded almost exactly with the story told by Baldwin at the trial.

The defendant took the stand and admitted being with Baldwin during practically all of the time in question, except for a few hours at the time of each robbery. He said that the boy had asked for his help in robbing the hardware store but he refused. He said he had been on a drinking spree during this period and claimed that he gave Baldwin the keys to his truck on the evening of May 7, and that he did not see the truck again until about 2:30 in the morning when he happened to see it parked by a gasoline station. He denied making any confessions to the San Diego or Tijuana officials, and while he admitted signing a statement and that it had been read to him he claimed that he signed it because he was told that it was necessary for him to do so in order to be deported.

It is first contended that the evidence is insufficient to support the judgment. It is argued that the only evidence connecting the defendant with the two crimes is that of the accomplice Baldwin, that the testimony of Baldwin was not only improbable but is not sufficiently corroborated by other evidence, and that it appears that the defendant did not have much, if any, money during the few days' stay in Tijuana because he testified that Baldwin paid most of their expenses and loaned him money several times.

No improbability appears in connection with Baldwin's testimony, although he testified that the defendant used a screwdriver in forcing an entrance into the hardware store whereas the defendant told the officers that he used a small wrench. The defendant owned the truck in which the stolen property was found, and the evidence justifies the inference that the stolen property was in his possession. The testimony of the accomplice was sufficiently corroborated by the admissions and confessions of the defendant, by his ownership of the truck and possession of the stolen property, and by the admitted fact that he was with Baldwin practically all of the time during the period in question.

Four assignments of error during the trial are made. The first is the receipt into evidence of the written statement of defendant given to the federal district attorney in Tijuana. This was signed by the defendant and a trans-

lation of it into English was added thereto by consent. The person who acted as interpreter at the time the statement was taken also testified to what was said by the defendant at that time. The statement signed by the defendant tended to corroborate the testimony of this official, and neither error nor prejudice appears. It is next contended that the confessions obtained from the defendant were not free and voluntary. While the defendant testified to this effect, the testimony of the various officials was flatly to the contrary. �damental The question was one of fact for the judge and jury, and the evidence fully sustains their findings in that regard. ▮ It is next contended that the court erred in permitting the owner of the hardware store to answer a question as to whether he had given the defendant, or any other person, permission to enter his store on the night of May 3d. No objection to the question was made and no error appears. ▮ Error is also assigned in that the court allowed the defendant's shoes to be received in evidence. Photographs of certain heel marks found at the scene of one of the burglaries were also introduced in evidence, and it is argued that no one testified as to the relation between the defendant's shoes and the heel marks so found. No objection was made and the jury was left free to make its own comparison.

▮ The final contention is that the court erred in denying the defendant's motion for a new trial. On this motion the affidavits of two persons were presented stating in effect that they saw the defendant in a pool hall in Fallbrook at some time between 8 and 10 p. m. on the night of May 3d. Affidavits of due diligence were also filed by the defendant and his attorney. The affidavits were far from sufficient to indicate that they could have affected the result in the event of a new trial, and no abuse of discretion appears.

The defendant's claim that his counsel at the trial failed to properly and adequately present his defense is entirely baseless and without merit. The appellant has been most ably represented on this appeal by different counsel, appointed by this court at his request.

The judgment and order are affirmed.

Griffin, J., and Mussell, J., concurred.